**NABER v. BRUNDAGE et al.   (No. 2475.)**

(Court of Civil Appeals of Texas.   Amarillo.
May 13, 1925.   Rehearing Denied
June 10, 1925.)

**1. Appeal and error ⟵⟶843(2)—Issues and instructions, on another theory than that on which court could have rendered judgment appealed from, immaterial.**

If theory, on which court could have rendered judgment appealed from, is supported by pleadings and uncontradicted evidence, all issues and instructions on another theory are immaterial.

**2. Trusts ⟵⟶371(2)—Facts alleged held sufficient to charge that money in defendant's hands was trust fund.**

Facts alleged in petition *held* sufficient to charge that money in defendant's hands was trust fund for purchase of title to oil and gas lease, without directly alleging such fact.

**3. Trusts ⟵⟶234—One taking money to acquire title to oil and gas lease held guilty of breach of trust in taking option subsequently forfeited for nonpayment of rentals by him.**

One receiving money for purchase of oil and gas lease, which he was to take title to in his own name, hold in trust, look after, keep in force and dispose of to best advantage, *held* guilty of breach of trust in taking mere option, which was forfeited for nonpayment of rentals by him.

**4. Trusts ⟵⟶359(1)—Beneficiary held entitled to sue for value of lease or purchase money with interest, where trustee took mere option to purchase, which was forfeited for nonpayment of rentals by him.**

Where one receiving money as trust fund for acquisition of title to oil and gas lease, paid it to owner of lease for mere option to purchase, which was subsequently forfeited for nonpayment of rentals by trustee, beneficiary could sue for value of lease or for purchase money with interest, and trustee could not complain of judgment, for purchase money and interest, where beneficiary did not complain.

Appeal from District Court, Wichita County; E. W. Napier, Judge.

Action by Mrs. D. A. Brundage and others against W. F. Naber.   Judgment for plaintiffs, and defendant appeals.   Affirmed.

Cook, Spencer & Stacy and Davenport, Cummings & Thornton, all of Wichita Falls, for appellant.

Fitzgerald & Hatchitt, of Wichita Falls, for appellees.

RANDOLPH, J.   The following statement of the case is taken from appellant's brief:

"Plaintiffs alleged that about the 23d day of October, 1919, defendant induced plaintiff, Mrs. D. A. Brundage, to deliver $1,000 to him, under promise that he could and would acquire title to oil and gas lease covering lot 2 of J. D. McCutcheon subdivision of the J. F. Miller lease of a certain tract of land belonging to him, and that he would give her a one-fourth interest to said lot 2, for $1,000; that he would take the assignment in his name and hold it in trust, and would look after the lease and keep the same in full force and dispose of same at best advantage. Plaintiff further alleged that his representations were false in that he did not intend to acquire title to said lease, but had theretofore entered into a contract for the purchase of the same and paid $2,800, and that the lease was deposited with R. E. Shepherd in escrow with directions from J. D. McCutcheon not to deliver same until he had paid $1,200, and that he did not advise plaintiff of the conditions, and plaintiff further alleged that defendant allowed said assignment to remain in escrow six months and neglected to pay the $1,200, and that about April, 1920, this lease became valuable and that she then learned that he had never acquired title by paying the purchase money; that McCutcheon had died and that the escrow holder refuses to deliver the lease and that defendant had allowed the lease to become forfeited for nonpayment of rentals.

"In the alternative plaintiff alleged that she had paid to defendant $1,000 with the understanding that defendant would acquire title to said lease and act as trustee so that the same might be disposed of for a profit, and alleged that the price advanced so that plaintiff could have sold at a profit of $750.

"Defendant answered by a general denial, and said it was not true that he made any false representations to plaintiff but says that she was fully informed of the conditions of the lease before she put her money into the same and denied that he assumed any obligation other than as joint tenant; that owner had all the rights and was charged with all the burdens incident to joint tenancy; defendant further alleged that there were five parties interested in said lease and beside the one-fourth interest of plaintiff, defendant paid $1,000, and owned a one-fourth interest, and that the other owners were C. C. Peters, E. Lewin, and D. A. Smith, and that the last named three paid in $800.

"The case was tried before a jury, and, upon an instructed verdict, the jury found for plaintiff in the sum of $1,000. Defendant's motion for a new trial was overruled, and he executed a supersedeas bond and brings the case before this court for review."

It will be seen that the plaintiff's petition presents two theories upon which she bases her right to recover. The first theory was, that appellant perpetrated a fraud upon her for the purpose of obtaining the $1,000 she turned over to him, by reason of certain false and fraudulent representations made by appellant to her, that he would acquire the lease in controversy in his own name, and hold it in trust for her; that he would diligently look after it, keep it in force, and dispose of it to the best advantage possible, and account to her for one-fourth interest in

same, when he did not intend to acquire the lease outright in his own name, but intended to enter into an option contract for the purchase of said lease, etc. The second theory was, that appellant, after inducing appellee to put up $1,000 with him for the purpose of acquiring a one-fourth interest in the lease on the terms stated, negligently allowed the lease to remain in escrow for more than six months, and until McCutcheon, the party from whom appellant was to have purchased the lease, died, and further, had allowed the lease to lapse and become forfeited for non-payment of rentals, and, in fact, had never acquired any title or interest in the lease, causing the appellee the loss of her $1,000, and also the loss of profits she would have made by the sale of her interest in the lease.

[1] Evidently the trial court ignored the theory based upon fraud, but disposed of the case upon the second theory, as shown by his refusal to submit any instruction upon the question of fraudulent representations and, also, be refused to award the appellees exemplary damages. However this may be, if the second theory upon which the court could have rendered his judgment in favor of appellee is supported by the pleadings and the uncontradicted evidence, all issues and instructions upon the theory of fraud and fraudulent representations become immaterial.

[2] It is true that appellees' petition charges that the title to the lease was to be taken in the name of appellant, and was to be held by him as trustee, and does not specifically charge that the money paid to him was a trust fund, yet the facts alleged in said petition, if proved, are sufficient to charge that the money in the hands of appellant was a trust fund, without directly alleging that the facts constituted it such trust fund. Sovereign Camp W. O. W. v. Ray (Tex. Civ. App.) 262 S. W. 820; Palermo Bros. v. Capps (Tex. Civ. App.) 196 S. W. 275; Heinemann v. Barfield, 136 Ark. 456, 207 S. W. 58; Boggs v. Bush (Ky.) 122 S. W. 220; Brown v. Slaton, 172 Ky. 787, 189 S. W. 1130; Mussina v Goldthwaite, 34 Tex. 125, 7 Am. Rep. 281; National Bank of Jefferson v. Texas Investment Co., 74 Tex. 421, 12 S. W. 101; Morris v. Holland, 10 Tex. Civ. App. 474, 31 S. W. 690; Hickernell v. Gregory (Tex. Civ. App.) 224 S. W. 691.

[3] The uncontradicted facts show that appellant received the money from appellee; that he paid it to McCutcheon, the owner of the lease. Appellee testifies that she bought a one-fourth interest in the lease in contro-

versy; that appellant was to look after it and he was to be trustee. Appellee was to acquire the title; that he always represented he had the title. He never told her that he did not have the title; that appellee did not know that Naber was only buying an option, and would not have let him have the money, if she had known that he was not buying the title. This was not specifically denied by appellant, but on the contrary he testifies:

"I expect that I told her that I had bought it. I did, or I could not have sold it to her. * * * I made an agreement and went to the bank with McCutcheon after I took Mrs. Brundage's check here and put up my check with it for $1,200. I don't think they would have given me the assignment unless I had paid for it—paid the $1,200. I don't imagine I told Mrs. Brundage that. I don't know that she knew it. I gave her check to McCutcheon, he had her $1,000. He also had my money, he had $1,800 of my money. Mr. McCutcheon died, and the bank would not deliver the assignment."

He also testifies that he had an agreement with McCutcheon that he could either pay for the lease or let it go, whichever he wanted. The lease was canceled by reason of the failure to pay rentals.

It appears from the evidence, that the title was to be acquired in the name of appellant, which was not done; that he does not deny this; that he did not complete a sale, but took an option, and let that option forfeit by reason of not paying the rentals. Under the uncontroverted facts, appellant held the money in trust, with certain obligations upon him, which obligations he did not perform.

[4] Appellant contends that appellee's measure of damage for her recovery was the value of the lease, etc. Appellant having received appellee's money as a trust fund, and having purchased the lease, the beneficiary was entitled to bring suit to take the new fund, or value thereof, or sue for the money and interest, whichever she saw fit to do. As she is not complaining of the judgment returning her purchase money with interest, the appellant has no right to do so. See cases cited in opinion of Justice Jackson in Spencer v. Pettit (Tex. Civ. App.) 268 S. W. 784, 785.

We therefore hold that there was no error in the trial court peremptorily instructing the jury to bring in the verdict that he did, and accordingly affirm the judgment of the trial court.