George COWDEN et al., Appellants,

v.

W. H. BELL, Appellee.

No. 13021.

Court of Civil Appeals of Texas.

San Antonio.

July 25, 1956.

Rehearing Denied Sept. 5, 1956.

F. L. Kuykendall, Austin, Fritz Sorrell, Lincoln Clark, Pearsall, for appellant.

Pope & Pope, Laredo, Magus F. Smith, McAllen, for appellee.

**612**

POPE, Justice.

W. H. Bell sued George Cowden and his children, hereinafter called Cowdens, in trespass to try title and obtained a summary judgment for title to a ½₂ mineral interest in lands. The legal question presented is whether Bell, the grantee under a deed from Cowden, is estopped from claiming under the deed because of his subsequent oral agreement not to record the deed and to treat the deed as inoperative. The trial court held that the oral agreement could not operate as a re-conveyance in the face of the Statute of Conveyances, Art. 1288, Vernon's Ann.Civ.Stats., and the Statute of Frauds, Art. 3995, Vernon's Ann. Civ.Stats. The suit is between the original parties, without the intervention of the rights of third persons.

In 1938, Bell, Cowden and Arthur Dawson, each contributed an equal amount of money for the purchase of a one-fourth mineral interest in a 652-acre tract of land in Frio County. Cowden took the title in his name, but immediately executed deeds to Bell for his one-twelfth interest and to Dawson for his one-twelfth. Dawson's interest is not in dispute. The deed to Bell was delivered to Dawson, who admittedly was Bell's agent, for delivery. Neither Dawson, as Bell's agent, nor Bell recorded the deed. During 1948, Cowden and the other record owners of the minerals executed an oil and gas lease. Drilling commenced in 1950 and several wells are producing. The Cowdens have received royalties in the sum of $10,544.76. Bell did not join in the lease and has received no royalties. Dawson, Bell's agent, died about 1946, and the unrecorded deed to Bell was found in 1954. When found, Bell immediately recorded the deed on November 29, 1954, sixteen years after its delivery. Cowden has conveyed some interest in the minerals by gift to his children. The rights of the lessee under the oil and gas lease are not disturbed. The suit concerns only the rights as they existed between Bell and Cowden,

the original parties to the transaction. Cowdens admit the legal title is in Bell, but insist that Bell is estopped from asserting title.

 On showing for summary judgment, we must take as true those facts asserted by Cowdens who resisted the motion. Gulbenkian v. Penn, 151 Tex. 412, 252 S.W.2d 929. Those estoppel facts show that Cowden delivered this deed to Bell in 1938. A few days after delivery, Bell expressed dissatisfaction with the deal while driving with Cowden to look at some cattle. They stopped at a cafe and Cowden there paid Bell in cash some $285. Only Bell and Cowden are witnesses to the transaction. Bell then told Cowden, "that in view of the fact that the deed from George Cowden to W. H. Bell, dated September 20, 1938, had not been personally delivered to W. H. Bell and had never been recorded, and in view of the fact that George Cowden was then the record holder of an undivided one-sixth interest in and to the minerals * * * that there was no need for W. H. Bell to execute a deed reconveying said mineral interest back to George Cowden. It was further understood and agreed that W. H. Bell would not take possession of said deed from George Cowden to him and that title to the undivided one-sixth interest in and to said minerals would belong to George Cowden."

The other estoppel facts are that Bell and Cowden intended that the deed to Bell should not be recorded, but that the deed would be treated as of no force and effect. The deed remained in the hands of Bell's agent until his death and thereafter it was lost, until it was discovered in 1954, when Bell recorded it. Bell, as early as 1951, knew that certain persons sued Cowdens to recover this mineral interest and Cowdens successfully defended the suit at an expense of $550. Bell did not offer to pay and did not pay any part of that expense. Cowdens paid all taxes on the mineral estate. Bell knew, as early as 1952, that oil was being

produced, but made no claim until he discovered and recorded the deed in 1954. Though Cowden executed an oil and gas lease in 1948, and lessee drilled oil wells, Cowdens have made no improvements to the mineral estate. This fact is acknowledged but it is asserted that Cowdens manifested every kind of ownership over the property of which they were capable.

In cases such as this the emphasis is so often placed upon the exception to a general rule that it may be well to restate the general rule which protects the whole public. A conveyance of real estate must be in writing. One who takes property by an oral conveyance, however innocent, is still in law charged with knowing that he can not do so. He is charged with knowing that the Statute of Conveyances, Article 1288, Vernon's Ann.Civ.Stats., provides: "No estate of inheritance or freehold * * * in lands and tenements, shall be conveyed from one to another, unless the conveyance be declared by an instrument in writing, subscribed and delivered by the party disposing of the same, or by his agent thereunto authorized by writing." He also is charged with knowledge that the Statute of Frauds, Article 3995, Vernon's Ann.Civ. Stats., prohibits an action upon a promise or agreement for the sale of real estate. Cowdens can not rely upon those rules which require a writing.

There are exceptions to the rule and therein lies the vagueness of the law. Cowdens rely upon the exception which applies when a grantee orally re-delivers, destroys, or loses his unrecorded deed. In the case of the lost deed, of course, there is a writing which conforms to the statutes. The problem is one of proof. In the case of a re-delivery or a destruction of a deed by the grantee, the grantee having put the proof of his title out of existence, he will not be heard to claim under it, and it is presumed that he destroyed that which would have hurt rather than benefited his title. 7

Thompson, Real Property (Perm.Ed.), § 4152.

Cowdens do not fall within any exception which excuses a writing to convey property. Bell, the grantee, did not agree to destroy the deed, re-deliver or surrender it. There was no agreement that Cowdens would pick up the deed from Bell's agent. The unrecorded deed remained in the possession of Bell's agent until the agent died in 1946. The deed was thereafter, in a sense, lost and discovered in 1954. At most, the agreement was that Bell agreed not to record the deed, but an unrecorded deed is valid and binding between the parties. Art. 6627, Vernon's Ann.Civ.Stats.; 36 Tex.Jur., Records and Reg. Acts, § 76.

There may be good reasons to estop one from asserting title when he has put the proof of his title beyond his control by destroying or re-delivering all his evidence of title. In 1 Devlin, Deeds (3rd Ed.), § 303, it is said:

"The principle upon which it is sought to support these decisions referred to in the preceding section is that briefly stated by Richardson, C. J., in an early case in New Hampshire: 'It is apprehended that in these cases the canceling of the deed operates like a reconveyance, but that it is not in fact to be considered as such. The true ground on which these decisions are to be supported is, that the grantee having voluntarily, and without any misapprehension or mistake, consented to the destruction of the deed with a view to revest the title, neither he nor any other person claiming by title subsequently derived from him is to be permitted to show the contents of the deeds so destroyed by parol evidence. So that, in fact, there being no competent evidence that the land ever passed, the title is to be considered as having always remained in the grantor.' It will be seen that this rule in the states

where it prevails is placed upon the ground of estoppel, and this is more fully declared in a subsequent case, in which it is said: 'If the deed has been canceled with the intention of revesting the title in the grantor, it would have that effect by way of estoppel. The grantee having put it out of his power to produce the deed, the law will not allow him to introduce secondary evidence in violation of his undertaking, and to defeat the fair intention of the parties. * * * An agreement to cancel or to return is not sufficient; it is no better than an agreement to reconvey, and leaves the deed in the hands of the grantee, so that the principle of estoppel cannot be applied.' "

The statutes are meant to forbid such oral transactions as occurred in this instance. Otherwise, land titles become a matter of credibility rather than writing and record. In our opinion the case is controlled by George v. Williamson, Tex.Com. App., 23 S.W.2d 675; Tate v. Tate, Tex. Com.App., 27 S.W.2d 137; Sanborn v. Murphy, 86 Tex. 437, 25 S.W. 610; Galbreath v. Templeton, 20 Tex. 45; Van Hook v. Simmons, infra; Lancaster v. Richardson, 13 Tex.Civ.App. 682, 35 S.W. 749; Goodwin v. Tyrrell, 8 Ariz. 238, 71 P. 906; Barrett v. Barron, 13 N.H. 150; Morse v. Child, 6 N.H. 521; Tripp v. McCurdy, 121 Me. 194, 116 A. 217.

No case cited to us has permitted so little to operate as an escape from the requirement for a writing. In Van Hook v. Simmons, 25 Tex.Supp. 323, 324, an agreement to destroy a deed, not merely suppress its record, was not enough. In Dycus v. Hart, 2 Tex.Civ.App. 354, 21 S.W. 299, estoppel is unnecessarily discussed, for the rights of an innocent purchaser were involved. The same is true in Cooper v. Hinman, Tex. Com.App., 235 S.W. 564, and Robinson v. Monning Dry Goods Co., Tex.Civ.App., 211 S.W. 535.. Mason v. Hood, Tex.Civ.App., 230 S.W. 468, required at least the actual

redelivery of the deed, coupled with intent to revest title.

Cowdens rely upon a group of cases wherein grantors have reserved vendor's liens and the vendee redelivers the deed without a reconveyance. These cases are of no help to Cowdens for several reasons. Cowdens can not claim a re-delivery of the deed, as in Higgs v. Farmer, Tex.Civ.App., 234 S.W.2d 1021, and Cooper v. Hinman, Tex.Com.App., 235 S.W. 564. The latter case also concerned an innocent purchaser. See Ledbetter v. Wright, Tex.Civ.App., 25 S.W.2d 271, 273. The reservation of an express vendor's lien by the grantor is actually an executory sale with title still in the vendor. The erasure of the debt does not disturb the title which has remained in the vendor; it eliminates the debt. The formal reconveyance is not necessary to effect such a rescission. Davis v. Cox., Tex.Com.App., 239 S.W. 917, 918; Hunter v. Hale, Tex.Civ.App., 233 S.W. 1005. Cowdens strongly rely upon Burnett v. Atteberry, 105 Tex. 119, 145 S.W. 582, wherein the Supreme Court writes at length about estoppel. Kistler v. Latham, Tex. Com.App., 255 S.W. 983, 985, clearly explains the Burnett case in line with what we have said. The Court said:

"The holding that a lien on land may be extinguished by parol rests on the proposition that, the lien being merely security for a debt and following the debt, any agreement with regard to the debt would affect also the lien. This matter is fully discussed in Burnett v. Atteberry, 105 Tex. 119, 145 S.W. 582. Clearly the extinguishment of a debt secured by lien on real estate extinguishes the lien, and this may be done, not only by payment, but by agreement of the parties concerned which otherwise satisfied the law. The verbal modification in the present instance, however, was not the waiver of a lien but was a modification of a contract, by which the plaintiffs agreed

to execute a lien upon real estate which comes clearly within the statute of frauds as above shown. This contract could not be modified by parol any more than a contract for the conveyance of real estate could be so modified."

■ Events which occurred subsequent to the date of the claimed oral agreement do not alter the result. We assume the full return to Bell of the consideration, that Cowden paid all taxes, leased the lands to an oil company, and conveyed by gift deed to his children. Cowdens make no claim that they took possession of the mineral estate nor that they made any improvements upon that estate. They assert that they did all that they could possibly do to exercise control over the property.

Equitable relief from the statute of frauds is sparingly granted because of what the Supreme Court calls a valid, imperative, emphatic, simple, certain and easily observed statute. "The effect of its relaxation in what seemed to the courts hard cases has produced abuses almost as great as would have its rigorous enforcement, in the substitution of a doubtful state of the law for a rule that was plain and certain and easily capable of observance." Hooks v. Bridgewater, 111 Tex. 122, 229 S.W. 1114, 1116, 15 A.L.R. 216. The Court then details the essential elements necessary to supply the need for a writing. Consideration alone is not enough, for that may be recovered in a suit. Possession alone is not enough, nor are both consideration and possession. Ann Berta Lodge, etc. v. Leverton, 42 Tex. 18. For an estoppel to arise, there must also be the making of valuable and permanent improvements with the owner's knowledge or consent. Hooks v. Bridgewater, supra. Equally forceful and unrelenting is Robertson v. Melton, Tex. Com.App., 131 Tex. 325, 115 S.W.2d 624, 118 A.L.R. 1505. Of such is the kind of estoppel which relieves from the clear statutes. Ward v. Etier, 113 Tex. 83, 251 S.W. 1028; Newson v. Hinton, Tex.Civ.App.,

250 S.W. 768; Houston Oil Co. of Texas v. Gore, Tex.Civ.App., 159 S.W. 924; Garza v. Martinez Mercantile Co., Tex.Civ. App., 208 S.W.2d 567; Matney v. Odom, Tex.Civ.App., 207 S.W.2d 420.

■ Cowdens plead that they should be excused from proof of improvements, because they had done all that it was possible for them to do with the mineral estate, by leasing it, paying taxes and defending its title. Courts have not excused persons from the requirement that they hold possession; La Rue v. Wiggins, Tex.Civ.App., 277 S.W.2d 808; nor from the payment of consideration, Hooks v. Bridgewater, supra; nor from making improvements, Gilliland v. Kimbrough, Tex.Civ.App., 146 S. W.2d 1101.

If proof of improvements be not required with reference to the mineral estate, one may wonder why it is required for the surface, unless one is bent on the gradual total destruction of the statutory general rule. A claimant under a limitation statute, holding for nine years and eleven months, may muster equities in his favor against a last minute suit by an owner who cuts the required possession short by a few days, but that does not estop the owner from ousting the claimant. Williams v. Conger, 49 Tex. 582; Thompson v. Allen, Tex.Civ.App., 111 S.W.2d 791.

One claiming the exception to the general rule, who asserts he has done all that he could possibly do, omits to mention one thing that he could have done, viz., closed his trade in writing, as required by law. As expressed in Taber v. Pettus Oil & Refining Co., 139 Tex. 395, 162 S.W.2d 959, 962, 141 A.L.R. 808, the "Respondent drilled the well charged with knowledge that the law would not enforce its alleged contract with Taber, hence it acted at its own peril and we cannot now do violence to the law to relieve it of the consequences."

■ Cowden reasons that he has brought no action, but merely defends upon grounds of an estoppel and that the Statute of

Frauds is not applicable for it prohibits actions not defenses. The Statute of Conveyances provides that no estate shall be conveyed except in writing. George v. Williamson, Tex.Com.App., 23 S.W.2d 675; Johnson v. Wallace, Tex.Civ.App., 191 S. W.2d 487.

The judgment is affirmed.